UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JAMES DE LOS SANTOS,** *Plaintiff* § § § | |
| v. § | No. 1:25-CV-00855-ADA |
| **MATTRESS BY APPOINTMENT LLC,** *Defendant* § § § § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ALAN D. ALBRIGHT
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Mattress by Appointment LLC's ("MBA") Motion to Compel Arbitration, Dkt. 4, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant MBA's motion.

## I.   BACKGROUND

This case arises from a commercial dispute between Plaintiff James de los Santos ("Santos") and Defendant MBA, a Florida-based limited liability company. Santos and MBA entered into a dealer agreement wherein Santos would operate as an independent dealer selling mattresses and related products within an exclusive territory in Austin, Texas. Dkt. 4-4, at 2. In exchange, MBA provided Santos with specialized training, confidential business materials, and access to its proprietary marketing and operations platform. Dkts. 4, at 3; 4-4, at 2.

1

MBA alleges that Santos attempted to promote and sell artificial intelligence tools to MBA's broader network of independent dealers—conduct MBA contends violated sections 3.1 and 9.2(v) of the dealer agreement, which prohibit marketing unapproved products and soliciting other MBA dealers to interfere with MBA's business relationships. Dkt. 4-1, at 8-12. Following this dispute, MBA claims that Santos continued to breach the agreement by declining to purchase products from MBA while continuing to use MBA's intellectual property. *Id*. at 3-4. MBA then terminated the dealer agreement based on Santos's failure to comply with its terms. *Id*. at 4. According to MBA, Santos and his business associates nonetheless continued to operate a competing mattress business using MBA's confidential information in violation of the agreement. Dkts. 4-4, at 17-18.

Santos initially filed this lawsuit in state court, seeking a declaratory judgment that Texas courts have proper and exclusive jurisdiction over disputes arising from the dealership agreement. Dkt. 4, at 4. In his petition, Santos alleged that the arbitration and forum-selection clauses in the dealer agreement are procedurally and substantively unconscionable, were never explained to him or meaningfully consented to, and thus are unenforceable under Texas law. Dkt. 4-3, at 3-4. He further contends that when he signed the agreement, he was not given a meaningful opportunity to negotiate, question, or opt out of the arbitration clause, and that enforcing the arbitration provision would violate public policy and impose undue hardship. *Id*. at 3.

MBA removed this case to federal court and filed a motion to compel arbitration. Dkt. 4. Citing the dealer agreement's express delegation clause, MBA contends that all issues related to the enforceability of the arbitration agreement—including jurisdictional and venue challenges—must be resolved by the arbitrator, not the Court. *Id.* at 6-7. MBA asserts that Santos agreed to resolve all disputes "arising from" or "relating to" the dealer agreement exclusively through arbitration administered by the American Arbitration Association in Duval County, Florida. *Id.* at 10. MBA asks the Court to compel Santos to arbitrate his claims and to stay this case in the meantime. *Id.* at 11.

## II.     LEGAL STANDARD

The Fifth Circuit has emphasized the strong federal policy in favor of arbitration. *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Under the Federal Arbitration Act ("FAA"), arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Pursuant to the FAA, enforcement of an arbitration agreement requires two analytical steps: "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F. 3d 199, 201 (5th Cir. 2016) (emphasis in original). Ordinarily, both questions are for the court. *Id.* But where the arbitration agreement contains a delegation clause giving the

3

arbitrator the primary authority to rule on the arbitrability of a specific claim, the arbitrator decides the second question. *Id.*

Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he FAA requires courts to first 'determine whether a valid arbitration agreement exists' before granting motions to compel arbitration." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (quoting *Henry Schein*, 586 U.S. at 69). Therefore, "courts must decide at the outset whether an enforceable arbitration agreement exists at all. The parties cannot delegate disputes over the very existence of an arbitration agreement." *Newman*, 23 F.4th at 398 (cleaned up).

### III.    DISCUSSION

MBA asks the Court to compel arbitration on the grounds that the dealer agreement requires arbitration of this dispute and further delegates questions of

arbitrability to the arbitrator. Dkt. 4, at 9-11. Santos responds that the arbitration clause is unenforceable because it is unconscionable and that enforcing it would result in a violation of Santos's constitutional due process rights. Dkt. 65, at 13. The undersigned finds that the parties entered into a contract with a valid arbitration agreement and that the agreement delegates questions about its enforceability to an arbitrator. As such, the District Judge should grant MBA's motion to compel arbitration and stay this case during that proceeding.

First, the parties entered into a valid arbitration agreement as part of the dealer agreement. Whether they entered a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202 "Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (internal quotation marks omitted) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "Evidence of mutual assent in written contract generally consists of signatures of both parties and delivery with intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). Additionally, a valid contract requires consideration. *In re Capco*, 669 F.3d at 280.

MBA attached a copy of the dealer agreement its motion showing that it was signed by both parties. Dkts. 4-1, at 16, 21-22; 65, at 4. Although Santos argues that he never signed an arbitration agreement, he later in the same brief admits to signing

the dealer agreement which contained the arbitration provision. Dkt. 65, at 4. Santos has also recognized in previous filings that he entered into the agreement and that it contained the at-issue arbitration provision. *See, e.g.,* Dkt. 4-3, at 3. Moreover, the undersigned finds that Santos and MBA entered in a valid contract under Texas law since there was an offer, acceptance, and meeting of the minds regarding the arbitration provision when MBA offered to allow Santos to sell its mattresses in an exclusive territory in consideration for MBA's support with marketing and operations. *See* Dkts. 4-4, at 22-38; 65-7, at 1; *Huckaba*, 892 F.3d at 689. Santos also signed a document entitled "consent to be bound by dealer agreement," further evincing his assent to the terms of that agreement. *See* Dkt. 4-4, at 44-45; *Huckaba*, 892 F.3d at 689. The undersigned thus finds that a valid arbitration agreement exists between the parties.

  Next, the undersigned finds that because the agreement contains a delegation clause, any questions as to its enforceability should be decided by an arbitrator. The arbitration provision in the agreement provides that "all Claims that arise during, in connection with, relating to, or as a result of the parties' business and contractual relationship" shall be resolved through binding arbitration administered by the American Arbitration Association. Dkt. 4-4, at 36. The provision also included a delegation clause stating that "[t]he arbitrator will have exclusive authority to resolve all disputes relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation, challenges to venue and/or personal jurisdiction." *Id.* This language constitutes a delegation clause that assigns gateway

questions of arbitrability to the arbitrator. *See Kubala*, 830 F.3d at 204 (enforcing a delegation clause providing that "[t]he arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability scope, enforceability, construction, validity and interpretation of this Policy").

In his response, Santos does not address the delegation clause itself but rather challenges the validity of the arbitration provision as unconscionable. *See* Dkts. 4-3, at 2-5; 65, at 12-13.[1] Because a valid arbitration agreement exists and clearly delegates questions about the "interpretation, applicability, enforceability, or formation" of the agreement to the arbitrator and Santos did not challenge the delegation clause itself, the undersigned finds that the question of arbitrability should be resolved by the arbitrator. Dkt. 4-1, at 16; *see Rent-A-Ctr.*, 561 U.S. at 72 (noting that "unless [plaintiff] challenged the delegation provision specifically" the Court "must enforce it" and "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator"); *Edwards v. DoorDash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.").

---

[1] Santos also contends that the arbitration clause is unconscionable because MBA exploited the death of his mother to impose extreme emotional and procedural pressure, thereby depriving him of a meaningful opportunity to defend his constitutional rights. Dkt. 65, at 12-13. Yet given that the dealer agreement was executed on October 1, 2024, and Santos presented evidence that his mother passed away on July 22, 2025, it is unclear how the death could have impacted the enforceability of the agreement. Dkts. 4-4, at 42; 65-22, at 6.

As to MBA's request that the Court stay this action pending arbitration, the undersigned recommends that the District Judge grant this request. *See Tello v. Porsche Fin. Servs., Inc.*, No. 1:23-CV-01206-RP, 2024 WL 5456734, at *4 (W.D. Tex. June 20, 2024); 9 U.S.C. § 3 (providing that a district court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

## IV.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** MBA's Motion to Compel Arbitration, Dkt. 4, and **DISMISS AS MOOT** Santos's remaining pending motions. The undersigned **FURTHER RECOMMENDS** that the District Judge **STAY** this case pending arbitration.

## V.   WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of

unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED August 4, 2025

                                            DUSTIN M. HOWELL
                                            UNITED STATES MAGISTRATE JUDGE